UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> -v- <br><br> JOHN BRADLEY, <br><br>                    Supervisee. | No. 13-cr-295 (RJS) <br> <u>ORDER</u> |

RICHARD J. SULLIVAN, Circuit Judge:

      On March 4, 2024, the Court held a violation of supervised release ("VOSR") hearing to resolve the six alleged violations against Supervisee John Bradley, as specified in the December 21, 2023 amended violation report prepared by the United States Probation Office. The specified violations alleged:

1. On or before October 25, 2023, the Supervisee used a controlled substance, to wit, marijuana. Grade C violation.

2. On or about November 4, 2023, in Queens, New York, the Supervisee committed a state crime, Strangulation in the Second Degree, in violation of New York Penal Law § 121.12, a Class D felony, in that he committed the crime of criminal obstruction of breathing or blood circulation, as defined in New York Penal Law § 121.11, and thereby caused stupor, loss of consciousness for any period of time, or any other physical injury or impairment. Grade A violation.

3. On or about November 4, 2023, in Queens, New York, the Supervisee committed a state crime, Assault in the Third Degree, in violation of New York Penal Law § 120.00, a Class A misdemeanor, in that he, with intent to cause physical injury

to another person, caused such injury to such person.  Grade C violation.

4. On or before November 4, 2023, the Supervisee left the judicial district without the permission of the Court or the Probation Officer, to wit, he traveled to Queens, New York.  Grade C violation.

5. On or before November 29, 2023, the Supervisee used a controlled substance, to wit, marijuana.  Grade C violation.

6. On or before December 16, 2023, the Supervisee left the judicial district without the permission of the Court or the Probation Officer, to wit, he traveled to Queens, New York.  Grade C violation.

At the conclusion of the VOSR hearing, and based on the preponderance of the evidence presented, the Court found that the Supervisee committed the violations stated in the first, fourth, fifth, and sixth specifications.  The Court reserved judgment on the second and third specifications – Strangulation in the Second Degree and Assault in the Third Degree – in order to review the elements of those offenses and the hearing transcript.  Having now reviewed those items, the Court finds by a preponderance of the evidence that the Supervisee committed the violations stated in the second and third specifications.

**A. Strangulation in the Second Degree**

Applying the preponderance of the evidence standard, the Court finds that Supervisee John Bradley committed Strangulation in the Second Degree during the overnight hours of November 3 and November 4, 2023.  Under New York Penal Law § 121.12, "[a] person is guilty of strangulation in the second degree when he or she commits the crime of criminal obstruction of breathing or blood circulation, as defined in section 121.11 of this article, and thereby causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment."

Section 121.11 in turn provides that "[a] person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she:  a.  applies pressure on the throat or neck of such person; or b.  blocks the nose or mouth of such person."  N.Y. Penal Law § 121.11.

The Court heard testimony from Eboni Joyner that, during an argument on the evening of November 3, 2024, the Supervisee slapped her across the face. (Doc. No. 66 at 29.)  In the ensuing altercation, Joyner fell to the floor.  (*See id.*)  After Joyner started screaming, the Supervisee, who was on top of Joyner's back, placed his arm around her neck and applied pressure, choking her.  (*See id.*)  Despite trying to resist by slipping her fingers under Supervisee's arm, Joyner began to "see black," became disoriented, and felt a tingling sensation.  (*Id.* at 29–30.)  After being strangled, Joyner remained face down on the ground for several minutes, until the Supervisee rolled her onto her back and splashed water on her face.  (*See id.* at 30–31.)  Later that night, while Joyner was crying and looking at her phone, the Supervisee slapped her across the face again.  (*See id.* at 32.)  The next morning, Joyner locked the Supervisee out of her building when he stepped outside, an act that enraged the Supervisee, who attempted to force the door open and shouted threats at Joyner, including that he would "give [her] something to be scared about."  (Gov. Ex. 101 at 2:04–14; *see generally* Gov. Ex. 101–02; Doc No. 66 at 33–38.)  The next day, on November 5, Joyner texted the Supervisee that she was heading to urgent care, and that if her jaw was broken, she was going to the police.  (*See* Doc. No. 66 at 43.)  In his response, the Supervisee did not express surprise but instead pleaded with Joyner not to go to the police and downplayed her injury.  (*See id.* at 43–44.)  As Joyner explained in her testimony, she went to urgent care because she had been experiencing a limited range of motion and a popping and grinding sensation in her jaw since the altercation.  (*See id.* at 38, 44.)

The Court found Joyner's testimony to be credible, but reserved judgment on the second and third specifications in order to review the elements of the offenses under New York law. Having done so, the Court now finds by a preponderance of the evidence that the Supervisee committed Strangulation in the Second Degree.

*First*, a preponderance of the evidence establishes that the Supervisee committed criminal obstruction of breathing or blood circulation as defined in section 121.11. As Joyner demonstrated at the hearing, the Supervisee used his forearm and upper arm to apply pressure to her neck. The Supervisee's intent to impede normal breathing or circulation is clear from the technique he employed and from the circumstances in which he did so: in response to Joyner's screaming and during a physical altercation that began after he struck her across the face. While Joyner's additional evidence – such as the video of the Supervisee threatening her outside her door and the text messages received from Supervisee after the altercation – do not specifically mention strangulation, that evidence is certainly consistent with Joyner's description of the altercation. It also bears noting that, in the video and text messages, the Supervisee never denied or even questioned Joyner's repeated assertions that she did not feel safe with the Supervisee. Considering the video and text message evidence together with Joyner's testimony, which, again, the Court found credible, the Court concludes by a preponderance of the evidence that the Supervisee obstructed Joyner's breathing or blood circulation, as defined in section 121.11.

*Second*, the Supervisee's act caused stupor within the meaning of section 121.12. New York courts have made clear that a strangulation victim who could "barely breathe," felt "light-headed," "gasp[ed] for air," and had "purple vision" experienced "stupor" for purposes of section 121.12. *See, e.g.*, *People v. Ruvalcaba*, 130 N.Y.S.3d 871, 875 (4th Dep't 2020). Here, Joyner testified that she was about to lose consciousness, had darkened vision, was disoriented, and felt a

4

tingling sensation as a result of the Supervisee's conduct. (Doc. No. 66 at 29–30.) After the strangulation, she remained on the ground for several minutes because she was "disoriented," "out of it," and "in and out of whatever state I was in." (*Id.* at 30.) The Court therefore finds by a preponderance of the evidence that the Supervisee's criminal obstruction of Joyner's breathing or blood circulation caused "stupor," and therefore that the Supervisee committed Strangulation in the Second Degree, in violation of New York Penal Law § 121.12.

### B. Assault in the Third Degree

Under New York Penal Law § 120.00, a person is guilty of Assault in the Third Degree when, "1. [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or 2. [h]e recklessly causes physical injury to another person; or 3. [w]ith criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." Based on the evidence presented at the hearing, the Court finds by a preponderance of the evidence that the Supervisee committed Assault in the Third Degree.

*First*, the evidence establishes that Joyner suffered a physical injury. New York law defines "physical injury" as the "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). "A variety of factors are relevant in determining whether physical injury has been established, including the injury viewed objectively, the victim's subjective description of the injury and his or her pain, and whether the victim sought medical treatment." *Matter of Angel ZZ.*, 198 N.Y.S.3d 795, 798 (3d Dep't 2023) (internal quotation marks omitted). Here, Joyner was experiencing a cracking, grinding, and popping sound in her jaw that was substantial enough to warrant evaluation at urgent care, and she at least temporarily lost the full range of motion of her jaw. While Joyner's injury did not cause her to miss any days of work, "[i]mpairment of physical

5

condition does not require a victim's incapacitation." *People v. Chery*, 66 N.Y.S.3d 887, 888 (2d Dep't 2018) (internal quotation marks omitted). The Court therefore concludes, by a preponderance of the evidence, that Joyner's jaw injury was an "impairment of physical condition" and therefore a "physical injury" for purposes of New York Penal Law § 120.00.

*Second*, the Court finds that the Supervisee caused Joyner's injury. The limited range of motion and grinding sound began after the Supervisee slapped Joyner twice across the face. Moreover, when Joyner informed the Supervisee that she would go to the police if urgent care determined that her jaw was broken, the Supervisee replied by pleading with her not to go to the police and downplaying her injury. That response, and particularly Supervisee's pleading with Joyner not to report the incident to the police, are consistent with the Supervisee having been responsible for Joyner's injury. Later, when Joyner accused the Supervisee over text of breaking her jaw, he responded not by denying that he caused her injury but by taking issue with whether her jaw was in fact broken.[1] (*See* Doc. No. 66 at 47–48.) Taking this evidence together with Joyner's testimony, the Court concludes by a preponderance of the evidence that the Supervisee caused Joyner's injury.

*Finally*, with respect to intent, the Court finds that the Supervisee's intent to cause the injury that Joyner suffered can be inferred from the "surrounding circumstances," including the multiple slaps, and from the fact that the resulting injury was "the natural and probable consequence[]" of Supervisee's actions. *People v. Steinberg*, 79 N.Y.2d 673, 682, 685 (1992). Accordingly, the Court finds by a preponderance of the evidence that the Supervisee committed

---

[1] While this later set of text messages was from an unknown number, Joyner testified that the Supervisee repeatedly texted her from unknown numbers to evade the block she placed on his main number, and that his identity was apparent from the content and context of the messages. (Doc. No. 66 at 45, 48.) In light of this testimony, and having evaluated the messages for itself, the Court concludes that they are from the Supervisee.

Assault in the Third Degree under New York Penal Law § 120.00.

*   *   *

For the foregoing reasons, The Court finds that the Supervisee committed the violations described in specifications two and three in the Probation Officer's December 21, 2023 violation report. For the reasons stated at the March 4, 2024 hearing, the Court has already found that the Supervisee committed violations one, four, five, and six.

Per the Court's order at the March 4, 2024 hearing, sentencing will take place on Wednesday, April 3, 2024 at 2:30 PM. The Supervisee shall file his sentencing submission by March 20th, 2024, and the government shall file its submission by March 27th, 2024.

SO ORDERED.

Dated:   March 11, 2024
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation